IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| TAMMY FANNING, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-2464 CM/DJW |
| | ) | |
| SITTON MOTOR LINES, INC. | ) | |
| and | ) | |
| JAMES F. DUKE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

The heirs of decedent Michael Fanning bring this wrongful death action to recover for the damages they have suffered as a result of the decedent's untimely death. As administrator of the decedent's estate, Plaintiff Tammy Fanning also brings a survival action against defendants Sitton Motor Lines, Inc. ("Sitton") and James F. Duke, asserting claims for emotional distress and pain and suffering the decedent allegedly suffered in the moments prior to his death. The matter is presently before the Court on two different motions by defendants for partial summary judgment, a "Motion for Partial Summary Judgment" (doc. #67) and a "Motion for Partial Summary Judgment as to the Appropriate Heirs-at-Law" (doc. #68).

I. Background

The facts material to the resolution of defendant's motions for partial summary judgment, construed most favorably to the plaintiffs, are as follows. In the early morning hours of September 26, 2006, Michael Fanning was driving his motorcycle along a highway near Yates Center, Kansas. Apparently due to his motorcycle having run out of gasoline,[1] Mr. Fanning abandoned the motorcycle and began walking alongside the highway. He was walking in a northerly direction when he was struck from behind by a semi-tractor and trailer owned by defendant Sitton Motor Lines and driven by defendant James F. Duke. The parties dispute whether Mr. Fanning had been walking alongside the highway or upon it at the time he was struck by Mr. Duke. Mr. Duke did not sound his horn nor slam on his brakes before his truck struck Mr. Fanning.

Mr. Fanning's body was not discovered until the next morning. There were no eyewitnesses to the incident. Mr. Fanning's death certificate listed the immediate causes of death as "atlanto-occipital separation" and "blunt trauma." According to the death certificate, death was "immediate." Given the injuries Mr. Fanning received, Dr. Erik Marshall, a pathologist who performed the autopsy, concluded that Mr. Fanning died immediately upon impact. The defendants also retained Dr. Thomas W. Young to assess the cause and timing of death, and Dr. Young similarly concluded that Mr. Fanning's death occurred immediately.

---

[1] Plaintiffs contend that Mr. Fanning had been walking towards a gas station in Yates Center, Kansas. Defendants concede that Mr. Fanning had "abandoned his motorcycle in a ditch a short distance south of the accident scene, apparently due to it being out of gas." (doc. #67 at 2).

II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local* 382, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this,

sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

III. Discussion

A. Survival Claim

The defendants contend that plaintiffs have not put forward sufficient evidence to support a survival action under K.S.A. § 60-1801 because there is no evidence that decedent experienced conscious pain and suffering before his death. In response, the plaintiffs assert that they have put forward sufficient evidence of post-impact conscious pain and suffering to survive summary judgment. Moreover, they contend that their survival claim is additionally justified on the basis of the pre-impact emotional distress Mr. Fanning must have suffered, as he was placed in fear of his immediate demise in the moments preceding impact.[2] The defendants did not explicitly set forth arguments

---

[2] Count II, setting forth the survival claim, stated that Mr. Fanning "experienced shock and fear immediately prior to being struck by the truck" in addition to his pain and suffering in the moments between impact and death. The plaintiffs elaborated upon this

4

regarding whether the plaintiffs have established a valid claim for pre-impact emotional distress, instead emphasizing that the plaintiffs have not put forward sufficient evidence of post-impact conscious pain and suffering.  Nonetheless, the Court finds it appropriate to consider the claim for pre-impact emotional distress, as the defendants did move to dismiss the survival claim in its entirety and plaintiffs relied in part upon their claim of pre-impact emotional distress to justify the survival action under K.S.A. § 60-1801.  For the sake of clarity, the Court will address each claim separately.

1. Post-Impact Pain and Suffering

In Kansas, damages may be recovered only for pain and suffering which is consciously experienced.  *St. Clair v. Denny*, 245 Kan. 414, 422, 781 P.2d 1043 (1989).  *See also Smith v. Printup*, 254 Kan. 315, 358, 866 P.2d 985, 1012 (1993) and *Cochrane v. Schneider Nat'l Carriers, Inc.*, 968 F. Supp. 613, 617 (D. Kan. 1997).  In support of their motion for partial summary judgment, the defendants put forward evidence that the decedent died immediately upon impact and therefore did not experience any conscious post-impact pain and suffering.  Dr. Erik Marshall, the pathologist conducting the decedent's autopsy, concluded that the decedent's spinal cord separated from his brain stem, causing an immediate cessation of vital functions.  In response to questioning, Dr.

---

pre-impact emotional distress claim in their response to the motion for summary judgment, arguing that Mr. Fanning would likely have recognized he would be hit by the truck approaching from behind and would therefore have suffered mental anguish in the moments prior to impact.

Marshall repeatedly concluded that the decedent died immediately,[3] noting that while the decedent may have had oxygenated blood for a short period of time, an individual with such an injury would not be breathing, would be "brain dead," and would for all medical purposes be considered dead. In addition, the defendants presented a report prepared by Dr. Thomas W. Young, who concluded upon review of the relevant evidence[4] that death occurred immediately upon impact, explaining that the injuries decedent incurred "would have led to an immediate cessation of vital functions, including consciousness."

Nonetheless, the plaintiffs seize upon comments made by Dr. Marshall and Dr. Young that the decedent's heart probably continued to beat for a little while and that the decedent may have had oxygenated blood in his brain for a couple of minutes, arguing that these concessions demonstrate the decedent experienced conscious pain and suffering for some period of time after impact. The plaintiffs also rely upon the fact that both physicians concluded the decedent must not have remained alive for a significant period of time, as the abdominal cavity did not contain copious blood. The plaintiffs contend that this demonstrates the decedent survived for some period of time after the impact, albeit not a *significant* period of time.

However, the plaintiffs seem to misunderstand the meaning of "conscious" pain and suffering under Kansas law, as the relevant inquiry is not whether the decedent's

---

[3] For example, when counsel asked hypothetically whether decedent would have been unconscious in the event he had not died immediately upon impact, Dr. Marshall replied "[h]e's dead." He stated several times during the course of his deposition that decedent would have died immediately.

[4] Dr. Young reviewed photographs, an accident report completed by the Kansas Highway Patrol, the death certificate, and the autopsy report.

vital functions continued after impact, but rather whether the decedent exhibited some cognitive awareness. *See Gregory v. Carey*, 246 Kan. 504, 509-10, 791 P.2d 1329, 1333-34 (1990). For example, in *St. Clair v. Denny*, the Kansas Supreme Court concluded that the plaintiff had not presented evidence of consciousness despite the sheriff testifying that the decedent had a pulse, because there was no indication that the decedent ever regained consciousness. 245 Kan. at 422, 781 P.2d at 1049. There was no evidence presented that the decedent had responded to stimuli or otherwise moved or made any noise after impact. *Id*. Likewise, in *Cochrane v. Schneider Nat'l Carriers, Inc.*, another automobile accident case, this Court found insufficient evidence of consciousness even though the decedent survived for a significant period of time after impact. *Cochrane*, 968 F.Supp. at 618. On the other hand, sufficient evidence of consciousness has been found where the decedent has breathed erratically and attempted to respond to others. *Smith*, 254 Kan. at 357, 866 P.2d at 1012. As this Court explained in *Cochrane*, in those instances where the courts found the decedent may have experienced conscious pain and suffering, there was emphasis placed upon the fact that the decedent moved or made sounds in response to questioning or other statements. 968 F.Supp. at 618. The plaintiffs here have presented no such evidence, but rather attempt to point to the mere possibility that the decedent's heart continued to function for a brief period of time to support of their claim of "conscious" pain and suffering. While the Court appreciates the difficulty the plaintiffs face in demonstrating consciousness where there are no eyewitnesses to the incident, the evidence garnered by the plaintiffs simply cannot support such a claim under Kansas law.

The plaintiffs rely upon *Fogarty v. Campbell 66 Exp., Inc.*, 640 F.Supp. 953 (D. Kan. 1986), in arguing that they have presented sufficient evidence of consciousness to survive summary judgment. In *Fogarty*, two trucks crashed into one another on a highway and the decedent's truck broke through a six-foot concrete wall in the aftermath of the initial impact. *Id*. at 955. The load of steel the decedent's truck had been carrying penetrated the cab, leading directly to his death. *Id*. However, it was uncertain whether the steel went through the back of the truck immediately after the initial collision or afterwards, when the truck crashed through the concrete wall. *Id*. at 963-64. Moreover, while the decedent's death certificate stated that the "interval between onset and death" was immediate, it did not define "onset." As the steel might not have penetrated the truck until after the concrete wall had been struck, the decedent might have remained conscious for the period after the initial collision and before the truck struck the concrete wall. *Id*. Therefore, the court concluded that summary judgment was inappropriate.

The plaintiffs assert that the circumstances surrounding Mr. Fanning's own death are similar to those presented in *Fogarty*. The plaintiffs point out, for example, that the decedent's death certificate similarly listed the "approximate interval" from "onset to death" as immediate, and likewise did not define "onset." However, the defendants have presented uncontested evidence from two physicians that Mr. Fanning died as a result of atlanto-occipital separation that occurred upon impact with Mr. Duke's truck. Therefore, unlike in *Fogarty*, there simply is no question as to which of two events directly resulted in death and therefore no issue of whether the decedent might have survived for a brief

period of time before the final, fatal impact. The Court therefore finds the conclusions reached in *Fogarty* inapposite.

The plaintiffs also cite to *Mozier v. Parsons*, 852 F.Supp. 925 (D. Kan. 1994), in support of their claim for post-impact pain and suffering. In *Mozier*, a child drowned in a residential pool and the plaintiffs presented evidence that she would have consciously endured pain and suffering unless she had been unconscious at the time she entered the pool. *Id*. at 932. A question remained as to whether the child had been conscious at the time she entered the pool and the court therefore found summary judgment inappropriate. The plaintiffs assert that the factual scenario in *Mozier* is similar to that of an accident victim who continues to have oxygenated blood for a few minutes after impact. However, this Court has previously distinguished the situation presented in *Mozier* from that of an automobile accident victim, where there is a "traumatic impact which can reasonably be expected to cause loss of consciousness at the time of impact, before any suffering occurs." *Garay v. Missouri Pacific R. Co*., 38 F.Supp.2d 892, 901 (D. Kan. 1999). In this latter situation, "it is impossible to determine without speculation, at what time the decedent lost consciousness." *Id*. On the other hand, in cases of suffocation or drowning, such as in *Mozier*, "the victim typically loses consciousness only after a period, however brief, of struggling to breathe," provided the victim has not been first knocked unconscious. *Id*. As Mr. Fanning's own death is akin to that of the automobile accident victim discussed in *Garay*, the Court finds the plaintiffs' attempts to analogize the two very different types of death unavailing.

9

The Court therefore finds that the plaintiffs have not come forward with any evidence by which a reasonable jury could infer post-impact consciousness. Accordingly, under Kansas law, the defendants are entitled to partial summary judgment on the plaintiffs' claim for post-impact pain and suffering.

2. Pre-Impact Emotional Distress

Plaintiffs also argue that their survival claim is warranted because the decedent would have suffered pre-impact emotional distress. However, under Kansas law, a plaintiff may recover for negligently inflicted emotional distress only where "it is accompanied by or results in physical injury…" *Fogarty*, 640 F. Supp. at 956 (quoting *Hoard v. Shawnee Mission Med. Ctr*, 233 Kan. 267, 274, 662 P.2d 1214, 1219-20 (1983)).[5] *See also Stephenson v. Honeywell Int'l, Inc.*, 2009 WL 3241595, at *3 (D. Kan. Oct. 5, 2009) (citations omitted). Plaintiffs have not put forward any evidence indicating that the alleged pre-impact emotional distress of the decedent resulted in any physical injury, such as causing decedent to suffer a heart attack. Rather, they are attempting to set forth a claim for emotional distress based upon the shock and fear they presume decedent must have felt in the moments immediately preceding the impact.

This Court has consistently concluded that Kansas law does not permit a claim for negligently-inflicted, pre-impact emotional distress that neither causes nor is contemporaneous with physical injury. *See Fogarty*, 640 F.Supp. at 962 (concluding that

---

[5] This physical injury requirement does not apply where the injurious conduct is willful, wanton, or intentional. *See Fogarty*, 640 F.Supp. at 956. *See also Stephenson*, 2009 WL 3241595, at *3, n. 4. However, plaintiffs have not made any such allegations.

the Kansas Supreme Court would not recognize such a claim). *See also Cochrane,* 968 F. Supp. at 617 (same) and *Stephenson*, 2009 WL 3241595, at *6-7 (same). Moreover, "generalized symptoms of panic or fright" concerning one's impending death do not satisfy this "physical injury" requirement. *Stephenson*, 2009 WL 3241595, at *4 (rejecting a claim for pre-impact emotional distress allegedly suffered during an airplane crash where the plaintiff merely presented evidence that the decedents would have suffered physical symptoms associated with fright and panic, such as rapid heart rate and difficulty breathing). As the plaintiffs have not put forward any evidence that would support their claim for pre-impact emotional distress under Kansas law, the Court concludes that summary judgment should be granted in the defendants' favor on the plaintiffs' emotional distress survival claim.

B. Claim Under K.S.A. § 66-176

In Count III, the plaintiffs assert a claim for treble damages, costs, and attorney fees under K.S.A. § 66-176, based upon Sitton's alleged breach of certain laws for the regulation of public common carriers.[6] Section 66-176 provides in relevant part:

---

[6] The plaintiffs do not specify the particular regulations that they contend Sitton breached such as to warrant application of K.S.A. § 66-176. However, they did assert that Sitton failed to have adequate safety programs to prevent driver fatigue, ignored violations of established safety programs, encouraged or failed to discourage drivers from improperly recording their hours of service in accordance with Federal Motor Carrier Safety Regulation § 395.8 and, along with defendant Duke, failed to complete the record of

> Any public utility or common carrier which violates any of the provisions of law for the regulation of public utilities or common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, the actual damages sustained by the party aggrieved, together with the costs of suit and reasonable attorney fees, to be fixed by the court.

Prior to 1995, § 66-176 additionally permitted a plaintiff to seek treble damages. However, in 1995, the Kansas legislature amended the statute to exclude this reference to treble damages.[7] *See United Cities Gas Co. v. Brock Exploration Co.*, 984 F.Supp. 1379, 1383 (D. Kan. 1997) (discussing the amendment). As plaintiffs therefore may no longer seek treble damages pursuant to this provision, the Court grants the defendant's motion for partial summary judgment insofar as the plaintiffs still seek such damages.[8] *See id.* at 1384 ("[a]s amended, K.S.A. § 66-176 subjects public utilities and common carriers to liability only for the "actual damages" of an aggrieved party.").

However, the plaintiffs also request all damages, costs, and attorney fees one might recover under § 66-176. The defendants argue that the claims are barred by the failure of the plaintiffs to file suit within the time provided by the applicable statute of limitations. While the accident occurred on September 26, 2006, the plaintiffs did not

---

activities required by § 395.8 and § 398.15 of the Federal Motor Carrier Safety Regulations. The plaintiffs also contend that Sitton ratified defendant Duke's conduct.

[7] The pre-amended version of the statute read in relevant part:

> **Forfeiture for violations; attorney's fees.** Any public utility or common carrier which shall violate any of the provisions of law for the regulation of such public utilities or common carriers shall forfeit, for every offense, to the person, company, or corporation aggrieved thereby, three times the actual damages sustained by the party aggrieved, together with the costs of suit, and a reasonable attorney fee, to be fixed by the court…

[8] In their response to the defendants' motion, the plaintiffs conceded that the Kansas legislature removed the treble damages provision.

file this action until September 25, 2008. According to the defendants, a one-year limitations period applies to the claim under § 66-176, and the plaintiffs consequently did not timely file their action.

Prior to the 1995 amendment to § 66-176, the statute was understood as authorizing an action upon a "statutory penalty or forfeiture." *Id*. at 1383. Therefore, actions brought pursuant to § 66-176 were subject to the one-year limitations period of K.S.A. 60-514(c). *Id*. *See also* K.S.A. 60-514(c) (setting forth a one-year statute of limitations for actions based upon a "statutory penalty or forfeiture"). However, the court in *United Cities* explained that the amendment of § 66-176 eliminated the previously punitive nature of the statute. This Court finds persuasive the reasoning set forth in *United Cities* for viewing § 66-176 as no longer containing a penalty or forfeiture provision. Thus, an action brought under the provision is now subject to the three-year statute of limitations set forth in K.S.A. 60-512(2), rather than the prior one-year limitations period. *Id*. at 1385. As a result, the plaintiffs timely filed their claims under § 66-176. Therefore, to the extent that the plaintiffs seek damages permitted under the amended version of § 66-176, the Court denies the defendants' motion to dismiss these claims.

C. The Appropriate Heirs-at-Law

The defendants filed a "Motion for Partial Summary Judgment as to the Appropriate Heirs-at-Law," asserting that the plaintiffs should be precluded from asserting any damages claims on behalf of the adopted grandchild of the decedent, N.F.,

13

whether directly as an heir-at-law claiming damages or indirectly by including her within the loss calculations. The defendants also request that the plaintiffs be prohibited from referencing N.F. at trial as an adopted child. After thoroughly reviewing the submissions of the parties, the Court grants the defendants' motion insofar as it seeks to preclude the plaintiffs from asserting claims for N.F. directly as an heir-at-law, but denies the motion insofar as it seeks to preclude the plaintiffs from referencing N.F. at trial or from using her presence in the Fanning household to establish Ms. Fanning's own damages from the loss of the decedent.

N.F. was adopted by plaintiff Tammy Fanning after the decedent's death. Although the plaintiffs contend that the decedent had discussed adoption of N.F. prior to his death, and that the decedent intended to adopt N.F., Ms. Fanning concedes that the adoption process was not initiated until after his death. The plaintiffs state that they do not seek damages for N.F. as an heir,[9] but argue that they should nevertheless be permitted to reference her at trial. They assert that testimony regarding N.F. is relevant

---

[9] Although the plaintiffs notified this Court that they do not seek damages for N.F., they nonetheless appear to assert in their response to the motion for summary judgment that N.F. would indeed qualify as an "heir" under Kansas law. In particular, they state that Ms. Fanning and the decedent intended to adopt N.F. prior to his death and that the process was finalized after his death. They then assert that the decedent "would have been a legal parent of N.F." had he not died, and that "this necessarily means that N.F. is an heir of Mr. Fanning." However, a mere agreement to adopt "is not itself sufficient to make the child a legal heir" because "the right to take as an heir exists only by operation of law." *In re Estate of Robbins*, 241 Kan. 620, 624-25, 738 P.2d 458, 462 (1987) (citing *Malaney v. Cameron*, 99 Kan. 70, 161 Pac. 1180 (1916)). One may be a legal "heir" entitled to inherit as a child under the intestate succession statute only where he or she has been born as a natural child or has been legally adopted. *Id*. (citing *Hickox v. Johnston*, 115 Kan. 845, 224 Pac. 905 (1924)).

for the following reasons. First, N.F. was a part of the decedent's household prior to the decedent's death, despite the fact that she had not yet been formally adopted. The plaintiffs therefore argue that the Court's exclusion of testimony concerning N.F. would result in an "incomplete depiction of the Fanning family" that the decedent financially supported. In this regard, the plaintiffs state that Ms. Fanning must now support N.F. as a result of her husband's death, which "is a loss to Ms. Fanning, who is a party-plaintiff." Second, the plaintiffs argue that exclusion of testimony regarding N.F. would create an "inaccurate self-consumption rate" for the decedent and lead to a gross underestimation of the pecuniary losses to the decedent's survivors. The plaintiffs' economic expert calculated the decedent's self-consumption rate based upon the number of individuals in the household, including N.F. Thus, while the plaintiffs state that they do not seek to make an official claim for damages on behalf of N.F., they argue that they should be permitted to reference N.F. in calculating their own damages, because her presence in the household affected the decedent's self-consumption rate, and because Ms. Fanning must now provide support for N.F. that would previously had been provided by the decedent. Third, the plaintiffs argue that testimony regarding N.F. is necessary to properly calculate damages related to health insurance costs. The decedent provided health insurance for those within the household and such expenses must now otherwise be taken care of. Therefore, the plaintiffs intend to include N.F. in their calculation of Ms. Fanning's own damages insofar as Ms. Fanning must now provide for her insurance expenses that previously would have been taken care of by the decedent. In sum, while the plaintiffs concede that they do not seek to assert damages claims on behalf of N.F. as an "heir,"

they assert that her presence in the household is relevant and affects the amount of damages suffered by Ms. Fanning.

In response, the defendants contend that the presence of N.F. in the household is not relevant to the calculation of damages because Mr. and Mrs. Fanning did not have a legal obligation to provide for N.F. at the time Mr. Fanning died. The defendants read Kansas law too narrowly. In *Wentling v. Medical Anesthesia Servs.*, the Kansas Supreme Court explained that a pecuniary loss may arise from a "deprivation of benefits that could reasonably be expected to have been received, originating from no more than a moral obligation." *Wentling v. Med. Anesthesia Servs.*, 237 Kan. 503, 509, 701 P.2d 939, 944 (1985). Moreover, the Kansas Court of Appeals has held that a child claiming damages for loss of a parent is not limited to the support a parent would provide during minority, the period of time for which the decedent would have a legal obligation, but instead extends to whatever support the child could reasonably have expected to receive during the child's entire lifetime. *Laterra v. Treaster*, 17 Kan.App.2d 714, 727, 844 P.2d 724, 733 (1992).

The defendants argue that allowing such evidence here would open the door to manipulation, such as by wholesale post-accident adoptions. However, the defendants overlook that it remains the plaintiffs' burden to persuade the jury that the damages sought are more likely than not those which were "reasonably…expected to have been received." *Wentling*, 237 Kan. at 509, 701 P.2d at 944. Thus, Ms. Fanning is not

precluded from presenting evidence of her claimed loss based upon the presence of the grandchild N.F. in the household.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the defendants' Motion for Partial Summary Judgment (doc. #67) is **granted in part and denied in part**. The plaintiff administrator's survival claims for damages for pain and suffering and pre-impact mental anguish are hereby dismissed. The defendants' Motion for Partial Summary Judgment as to the Appropriate Heirs-at-Law (doc. #68) is **granted** insofar as the defendants seek to preclude the plaintiffs from asserting claims for N.F. directly as an heir, but is **denied** insofar as the defendants seek to preclude the plaintiffs from using N.F.'s presence in the household to establish Ms. Fanning's own damages.

**IT IS SO ORDERED.**

Dated this 16th day of February, 2010, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge